## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

LONNIE MOULTRY, ON HIS OWN
BEHALF AND OTHERS
SIMILARLY SITUATED,

                CASE NO.:  8:07-CV-453-RAL-MSS

        Plaintiffs,

vs.

CEMEX, INC., A FOREIGN
CORPORATION,

        Defendant.

_____/

### PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Local Rules for the United States District Court for the Middle District of Florida, Plaintiffs, Lonnie Moultry *et. al.* move for summary judgment as to Defendant's Motor Carrier Act defense in the above styled action and state as follows:

### SUMMARY OF THE ARGUMENT

Defendant does not, and cannot, dispute that during their employment, Plaintiffs worked more than forty (40) hours in one or more workweeks and were not paid full and proper overtime for same.  As its *post hoc* rationalization for not paying Plaintiffs overtime to which they were entitled, Defendant maintains that Plaintiffs are somehow exempt from the FLSA's overtime provisions based upon the Motor Carrier Act ("MCA") defense.

Simply put, Plaintiffs are entitled to judgment as a matter of law on Defendant's MCA defense because it is undisputed that: (1) Plaintiffs never made out of state deliveries and thus,

their work was intrastate in nature only; (2) the very product that Plaintiffs transported- cement- was made locally in Florida by Plaintiffs during their commute to the Defendant's customer's place of business so the product they transported was not "interstate" in nature; and (3) the aggregate and ingredients from which the cement was made and mixed here in Florida was not part of the "practical continuity of interstate commerce" because: (a) the aggregate and ingredient used to make the cement were delivered in bulk to Defendant with no specifically identified or predetermined end consumer other than Defendant; (b) the aggregate and ingredients were stored indefinitely (up to ten years) and mixed/commingled with other products in general inventory in large silos here in Florida until a Florida customer determined that they wanted to purchase cement from Defendant at which point it was then made locally from the aggregate and ingredients; and (c) once an order was placed by a Florida customer, the aggregate and the ingredients for the cement were modified and processed to create the cement by Plaintiffs here in Florida *en route* to the delivery. Thus, in light of the fact that Plaintiffs made local deliveries of locally made cement to Florida customers, and because the MCA must be construed narrowly against the employer, Defendant has not, and cannot, meet its heavy burden of maintaining the MCA defense and summary judgment is appropriate regarding same.

Additionally, because the MCA defense is inapplicable and Defendant is liable for overtime damages, it likewise is required to pay Plaintiffs liquidated or double damages on their overtime claims because it is undisputed that prior to this lawsuit being filed: (1) Defendant never consulted with the Department of Labor, an accountant, or an attorney prior to learning of Plaintiffs' claims to determine whether their pay practices were in compliance with the Fair Labor Standards Act; and (2) the DOL found that Defendant did not have a basis to assert the MCA defense and Defendant still refused to pay proper overtime to Plaintiffs or other class

2

members thereafter.  For this reason, Defendant's failure to pay overtime was not in "good faith," and liquidated damages are warranted under FLSA and this Circuit's jurisprudence.

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

Plaintiffs contemporaneously filed their Local Rule 56.1 Statement of Undisputed Facts as a separate document and conferred as required by this Court's Scheduling Order governing summary judgment procedures.

**MEMORANDUM OF LAW**

**I.    PLAINTIFFS DO NOT FALL WITHIN THE MCA EXEMPTION.**

**A. The MCA Exemption Must be Construed Narrowly.**

The FLSA requires employers to pay overtime wages to certain employees who work more than forty hours in a week. *See* 29 U.S.C. § 207.  The FLSA exempts from its overtime requirements, however, "any employee with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." 29 U.S.C. § 213(b).  It is well settled that courts are required to construe narrowly against an employer all exemptions to FLSA coverage. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392 (1960). "An exemption to the FLSA *may only be applied* in circumstances which plainly and unmistakably come within the terms and spirit of the exemption." *Nichols v. City of Chicago,* 1992 WL 92117 at *8 (N.D. Ill. Apr. 30, 1992) (citing *Arnold,* 361 U.S. at 392)(emphasis added).   The MCA exemption is no different and likewise "is construed narrowly against employers, *and defendants have the burden* to establish that the exemption applies to [each of] its employees." *Alice v. GCS, Inc.,* 2006 WL 2644958, at *2, (N.D. Ill., Sept. 14, 2006) (*citing Turk v. Buffets, Inc.* 940 F. Supp. 1255, 1259

(N.D.Ill.1996))(emphasis added). *See also Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir.1995).

It is undisputed that, in the instant matter, Defendant did not compensate Plaintiffs for some or all of the hours worked in excess of forty hours per week during the relevant limitations period. *See* Statement of Undisputed Facts at ¶¶20-24.  Thus, Defendant is liable to Plaintiffs for overtime compensation unless it can establish that Plaintiffs somehow fall within the MCA exemption as alleged in its Answer.  *See* Answer at p.3 (Fourth Affirmative Defense). Simply put, Defendant cannot do so.

**B.     The MCA Exemption is Inapplicable to Plaintiffs.**

**1.     The MCA Exemption**

The relevant regulations provide that the MCA exemption applies if (a) the employee actually transports goods across state lines, or (b) the employee transports goods as "a part of a practical continuity of movement across state lines from the point of origin to the point of destination." 29 C.F.R. § 782.7(b)(1) (citations omitted);  *see also Goldberg v. Faber Industries, Inc.,* 291 F.2d 232, 234 (7th Cir. 1961) (stating that carrier exemptions can be established "in one of two ways, 1) by the motor vehicle being driven across state lines; or 2) where the motor vehicle is operated wholly upon the highways of a single state, but the transportation performed is part of a through movement originating in or destined to a point in another state.").  The record in this case, and most importantly, Defendant's own representatives' testimony illustrates that it clearly does not meet either of these requirements to establish the defense.

### 2. Plaintiffs Do Not Drive Out of State as Part of Their Regular Duties and Do Not Transport Goods That Form a Practical Continuity of Interstate Movement.

#### A. <u>Plaintiffs Do Not Drive Out of State</u>.

It is undisputed that Plaintiffs do not drive across state lines as part of their regular duties with Defendant. *See* Statement of Undisputed Facts at ¶¶4-8.   It is further undisputed that the very product Plaintiffs deliver- cement- is mixed and made locally from aggregate and other ingredients here in Florida only after being ordered and scheduled for local delivery by a Florida customer. *See* Statement of Undisputed Facts at ¶¶17,18.   Thus, the only way Plaintiffs can somehow fall within the MCA exemption is if Defendant establishes that Plaintiffs transport goods or products that form part of a "practical continuity of interstate movement."  It cannot.

#### B. The Cement Plaintiffs Deliver is Made in Florida- Thus it Cannot Be a Good or Product that Forms a "Practical Continuity of Interstate Movement."

The Secretary of Transportation has jurisdiction over a motor carrier under 49 U.S.C. § 13501 "if the goods being transported within the borders of one State are involved in a 'practical continuity of movement' in the flow of interstate commerce." *Bilyou v. Dutchess Beer Distributors. Inc.*, 300 F.3d 217, 223 (2d Cir.2002); *Foxworthy v. Hiland Dairy Co.*, 997 F.2d 670, 672 (10th Cir.1993). 29 C.F.R. § 782.7(b)(1). However, when goods are delivered from out of state to a storage facility, intrastate transportation of the goods from the storage facility does not constitute interstate commerce "if the shipper ha[d] no fixed and persisting transportation intent beyond the terminal storage point at the time of shipment." 29 C.F.R. § 782.7(b)(2). According to the Department of Labor, who enforces the FLSA:

> [T]here is no "fixed and persisting" intent [to ship goods in interstate commerce] where (i) At the time of shipment there is no specific order being filled for a specific quantity of the given product to be moved through to a specific destination beyond the terminal storage, and (ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and (iii) transportation

in the furtherance of this distribution with the single State is specifically arranged only after sale or allocation from storage.

*See* 29 C.F.R. § 782.7(b)(2). That is, it is "[t]he intent at the time transportation commences [that] 'fixes the character of the shipment for all the legs of the transport within the United States." *Bilyou*, 300 F.3d at 223-224; *See also Saldibar v. Delray One, Inc.*, 2008 WL 755265 (S.D.Fla. 2008).

Relevant factors to consider in determining whether a purely intrastate shipment of goods meets this test of "fixed and persisting" intent include (1) whether the products are held in storage or inventory pending the receipt of actual orders after transport; (2) the length of time that movement of the product is interrupted by storage; (3) whether the distribution center has a low "through-put" compared to its storage capability; (4) whether the products are shipped on a "predetermined" ordering cycle; (5) whether the carrier is in continuous possession of the product until delivery; (6) whether the product is processed or commingled in any way at the storage location; (7) whether the final destination is designated by the out of state shipper, or by an instate intermediator; (8) whether the goods were intended for particular customers; and (9) whether temporary storage simply provides an efficient opportunity to convert the means of delivery from one form of transportation to another. *See Foxworthy v. Hiland Dairy Co*., 997 F.2d 670 (10th Cir.1993); *Middlewest Motor Freight Bureau v. Interstate Commerce Comm'n*, 867 F.2d 458 (8th Cir.), *cert. den*., 493 U.S. 890, 110 S.Ct. 234, 107 L.Ed.2d 185 (1989); *Texas v. United States,* 866 F.2d 1546 (5th Cir.1989*); Baird v. Wagoner Transportation Co*., 425 F.2d 407 (6th Cir.), *cert. den*., 400 U.S. 829, 91 S.Ct. 58, 27 L.Ed.2d 59 (1970). *See also DeMaria v. Ryan P. Relocator Co.*, 512 F.Supp.2d 1249 (S.D.Fla. 2007)(finding no fixed and persistent intent where Defendant failed to establish that the furniture in question was shipped to

warehouse pursuant to specific customer orders or contracts or any evidence outlining the relevant timetable for the shipments).

Here, the record evidence establishes that the continuity of interstate movement involving the cement Plaintiffs ultimately deliver is broken, and Plaintiffs are therefore not exempt from the FLSA. Specifically, it is undisputed that:

- When Defendant purchases aggregate and ingredients from in and out of state suppliers, Defendant alone is designated as the purchaser/buyer of the products and has complete control over them once delivered- not the ultimate Florida customer to whom Defendant at some indefinite point in the future turns around and sells cement or the vendor who sold Defendant the aggregate and ingredients. *See* Statement of Undisputed Facts at ¶¶10-12.

- When Defendant receives the aggregate and ingredients from the cement, it mixes it with other aggregate and ingredients from prior orders and stores it indefinitely in its Silos here in Florida. *See id.* at ¶¶15-17. The aggregate and ingredients can sit in these Silos for up to ten (10) years if not ordered. *See id.*

- At some undetermined point after aggregate and ingredients arrive in Defendant's general inventory, and after they are inventoried and stored, Florida customers purchase a different product than what is sitting in storage- cement- at which time the aggregate and ingredients are then placed in Plaintiffs' cement trucks for mixing and delivery as a finalized product to the customer. *See id* at ¶¶18,19.

In light of the foregoing, the first fatal flaw in Defendant's MCA argument is that it cannot establish that, at the time it purchases aggregate and ingredients from its suppliers, that those suppliers had a fixed and persistent intent that the aggregate and ingredients were being shipped to someone other than Defendant. *See* Statement of Undisputed Facts at ¶11. And, because Defendant's aggregate and ingredient suppliers (who are the shippers) had no interest or control over the aggregate and ingredients once purchased by Defendant, Defendant cannot argue that its suppliers had a fixed and persistent intent for the product to continue on to another destination. *See id.* Indeed, Defendant's own documents and testimony support this conclusion. *See id.* Thus, the exemption simply is inapplicable for this reason alone. *See Alice v. GCS*, 2006

WL 2644958 * 4 (N.D. Ill. Sept. 14, 2006)(holding that the defendant did not have a fixed and persistent intent to transport the product at issue in interstate commerce because the storage/stopping facility where the goods initially were delivered to determined the final destination of the product only after it sorted, processed, and commingled with other products).

Moreover, it is essential to consider that once the aggregate and ingredients arrive at Defendant's storage facilities, they are sorted, mixed, inventoried, and stored in large silos for up to ten (10) years for subsequent selection and purchase by Defendant's Florida customers. *See* Statement of Undisputed Facts at ¶¶13-17.  MCA jurisprudence holds that where, like here, goods come to rest at a warehouse and are inventoried, commingled, processed, or modified, the chain of interstate commerce is broken for MCA purposes and the exemption is inapplicable. *See Atlantic Coast Line R. Co. v. Standard Oil Co. of Ky.*, 275 US 257 (1927); *Higgins v. Carr Bros. Co.*, 317 U.S. 572 (1943); *Texas v. U.S.*, 866 F.2d 1546, 1557 (5th Cir. 1989).  "Indefinite storage in a warehouse may transform goods shipped from out-of-state into intrastate deliveries." *Watkins v. Ameripride Serv's,* 375 F.3d 821, 825 (9th Cir. 2004).

This point is made even stronger based upon the fact that the aggregate and ingredients purchased and stored by Defendant in the instant matter are not even the actual product purchased by Defendant's Florida customers.  Indeed, the aggregate and ingredients are simply part of the final product- concrete- that is purchased.  Thus, it is evident that the aggregate and ingredients are not part of interstate movement where they have been stored indefinitely and modified prior to sale. *See Goldberg v. Faber Indus., Inc.*, 291 F.2d 232, 234 (7th Cir.1961) (drivers transporting meat scraps to Illinois "rendering plants where they [were] processed into grease and livestock and poultry foods" were not engaged in interstate commerce because the processing broke "the continuity of the transportation, thus precluding a holding that there [was]

8

a through interstate movement of the meat scraps."); *see also Alice,* 2006 WL at *4 (holding that the MCA exemption did not apply because the plaintiffs processed the refuse before sending it out of state, thus interrupting the continuity of the movement of goods in interstate commerce).

Here, Defendant cannot dispute that the aggregate and ingredients it purchased in its own name to mix and resell locally came to a rest when they were commingled and dumped in general inventory for local resale in a different form. *See* Statement of Undisputed Facts at ¶¶13-17. Defendant cannot dispute that the suppliers of this aggregate and ingredients had no knowledge as to who the end consumer of the cement these products would be combined to make (possibly ten (10) years later) could or would be. *See* Statement of Undisputed Facts at ¶¶11,13-17. This alone defeats Defendant's MCA exemption, and Plaintiffs' contention that the MCA exemption is inapplicable based on these facts is further supported by the case law addressing this issue.

For example, in *Southern Pac. Transp. Co. v. ICC.,* 565 F.2d 615 (9th Cir. 1977), a company's employees transported canned goods from one Del Monte storage facility in California to another facility in California. Despite the fact that most of the canned goods were subsequently shipped out of California, the court found that the storage of the canned goods in the second California facility broke the continuity of interstate movement, because the goods' ultimate destination was not determined until after the goods were laid to rest at the warehouse. *See id.* at 620. Accordingly, the court looked at the first intrastate movement of goods as unconnected to the subsequent interstate shipments and therefore found that the DOT had no jurisdiction over the company or its workers involved in the transportation of such goods.

Similarly in *Watkins,* the court dealt with the inverse situation, *i.e.,* goods that were initially shipped from another state, but as a result of a break in their continuity of movement,

their subsequent shipment was considered intrastate in nature. *See Watkins,* 375 F.3d at 826-827. There, the defendant uniform company, stored uniforms delivered from out of state in its warehouse with no specific customers in mind and, upon receipt of specific local orders, allocated goods for the orders from the warehouse inventory. *See id.* As a result, the court found that plaintiffs' subsequent intrastate delivery of these goods was not part of the practical continuity of interstate movement, and the plaintiffs were therefore non-exempt from the FLSA. *See id* (applying the FLSA standard to California labor law).

Similarly, in *Demaria v. Ryan P. Relocator,* 2007 WL 419449 (S.D. Fla., Feb. 5, 2007), a case litigated by the undersigned's co-counsel, the court found non-exempt a furniture deliveryman who transported furniture from one warehouse in Florida to another warehouse in Florida, even though the furniture had originally been shipped to the first warehouse from outside of Florida. Again, the court stressed that the practical continuity of movement was broken because the defendant did not establish that the furniture was shipped from Georgia to Florida pursuant to a specific order or with a specific destination other than the Florida warehouse. The undisputed evidence in the instant case reflects the same logic here.

As discussed above, there is no evidence to establish that Defendant's aggregate and ingredient suppliers deliver these products to Defendant pursuant to specific customer orders and quantities, and with an intended specific destination beyond Defendant's silos/inventory. Accordingly, Plaintiffs' duties in locally mixing and delivering cement containing these products fall squarely within those duties that the relevant regulations and case law define as non-exempt under the FLSA. *See Alice,* 2006 WL 2644958 at *4; *Goldberg,* 291 F.2d at 235.

Merits discovery is now closed; all documents in Defendant's possession that were produced have been reviewed and the relevant witnesses identified by Defendant have been

deposed. Based upon the completeness of the evidentiary review conducted, there simply is no evidence to support the applicability of Defendant's purported MCA defense. Accordingly, Plaintiffs respectfully request that this Court grant them summary judgment on the issue of the Motor Carrier exemption on this issue.[1]

## II.   **PLAINTIFFS ARE ENTITLED TO SUMMARY JUDGMENT ON THE ISSUE OF LIQUIDATED DAMAGES.**

"Any employer who violates [29 U.S.C. § 207] shall be liable to the employee - - - in the amount of - - - [his] unpaid [minimum wage and overtime] compensation - - - and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has both a subjective and objective component. *Dybach v. Fla. Dep't of Corr.*, 942 F.2d 1562, 1566 (11th Cir.1991). Liquidated damages are mandatory absent a showing of good faith. *Spires v. Ben Hill County*, 980 F.2d 683 (11th Cir.

---

[1] The only argument Defendant indicated it would make in favor of the applicability of the MCA exemption was that, because Defendant was subject to compliance audits by the Department of Transportation, that this somehow subjects it to the MCA exemption. Respectfully, this argument is misleading and inaccurate. For the MCA exemption to apply, a Defendant must show not only that it is subject to the authority of the Secretary of Transportation, but *it also must show* that its drivers engaged in activities that directly affected the safe operation of motor vehicles on public highways; **_and_** (3) the drivers transported passengers or property on public highways in interstate commerce. *See* 29 C.F.R. § 782.2(a)-(b)(2); *see also Southland Gasoline Co. v. Bayley*, 319 U.S. 44, 63 (1944). Thus, Defendant's only anticipated argument that it was confused, is not an argument at all and does not preclude liability nor the applicability of liquidated damages. *See Williams v. Maryland Office Relocators*, 485 F.Supp.2d 616 (D.Md. 2007)(Defendant failed to avoid liability for liquidated damages where its basis for good faith was: 1) that it acted with the reasonable belief that its drivers were covered by the Motor Carrier Act and 2) the application of the Motor Carrier exemption is complex and confusing and could easily lead an employer attempting to act in good faith to the wrong conclusion).

1993). "[G]ood faith requires some duty to investigate potential liability under [the] FLSA." *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 469 (5th Cir.1979).[2]

The cases interpreting the above standard have made it clear that the employer's burden to establish "good faith and ... reasonable grounds" is not a light one. *See Friedman v. S. Fla. Psychiatric Assocs., Inc.*, 139 F. App'x 183, 185-86 (11th Cir.2005) (employer's testimony that it researched the FLSA in the past was insufficient because it did not update its research); *Spires v. Ben Hill County*, 980 F.2d 683, 690 (11th Cir.1993) (employer failed to demonstrate good faith because "it took no action whatsoever to investigate its compliance with the [FLSA] until it was contacted by the plaintiff's counsel"); *Joiner v. City of Macon*, 814 F.2d 1537, 1539 (11th Cir.1987)(Department of Labor's amendment of a rule exempting the employer from coverage "deprived [the employer] of a good faith defense"); *McGuire v. Hillsborough County, Fla.*, 511 F.Supp.2d 1211, 1216-17 (M.D.Fla.2007) (employer failed to show good faith because it relied on non-binding case law from the outside the Eleventh Circuit and failed to adequately consider Department of Labor regulations).

In the instant matter, the undisputed facts show that Defendant cannot avoid the imposition of liquidated damages. This is particularly true considering that: (a) Defendant made no effort, until learning of this lawsuit, to consult with the Department of Labor, an attorney, or an accountant to determine whether its pay practices were in compliance with the FLSA; (b) Defendant was advised by the DOL that the MCA exemption did not apply yet it failed to properly pay all Plaintiffs for overtime subsequent to learning of same; and (c) the only reason for failing to pay overtime was that it believed that DOT jurisdiction alone was sufficient to

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

For the reasons articulated above, Plaintiffs respectfully request that this Court enter an Order granting judgment on liability and liquidated damages in Plaintiffs' favor.

Respectfully submitted this 2nd day of June 2008.

**s/ RICHARD CELLER**
Richard Celler, Esq.
Florida Bar No.: 173370
Carlos Leach, Esq.
Florida Bar No.: 0540021
MORGAN & MORGAN, P.A.
20 N. Orange Avenue, 4th Floor
P.O. Box 4979
Orlando, Florida 32802-4979
Telephone: (407) 420-1414
Facsimile: (407) 420-5956
E-mail: rceller@forthepeople.com
E-mail: cleach@forthepeople.com

Trial Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing of Plaintiffs, LONNIE MOULTRY, on his own behalf and others similarly situated, has been served upon Kevin Zwetsch, Esquire, FOWLER WHITE BOGGS BANKER P.A., P.O. Box 1438, 501 East Kennedy Blvd., Suite 1700, Tampa, FL 33601, E-Mail: kzwetsch@fowlerwhite.com, using the CM/ECF system which I understand will send a notice of electronic filing, on this 2nd day of June 2008.

**s/ CARLOS LEACH**
Carlos V. Leach, Esquire

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the above and foregoing of Plaintiffs, LONNIE MOULTRY, on his own behalf and others similarly situated, has been served upon Kevin Zwetsch, Esquire, FOWLER WHITE BOGGS BANKER P.A., P.O. Box 1438, 501 East Kennedy Blvd., Suite 1700, Tampa, FL 33601, E-Mail: kzwetsch@fowlerwhite.com, using the CM/ECF system which I understand will send a notice of electronic filing, on this 2nd day of June 2008.

**s/ CARLOS LEACH**
Carlos V. Leach, Esquire